J-S62036-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICHARD CHARLES MILLER | |
| Appellant | No. 3598 EDA 2013 |

Appeal from the PCRA Order November 12, 2013
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0004344-2010

BEFORE:  ALLEN, J., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 01, 2015**

Richard Charles Miller appeals from the order entered November 12, 2013, in the Lehigh County Court of Common Pleas, denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*.  Miller seeks relief from the judgment of sentence of an aggregate 15 to 30 years' imprisonment, imposed on November 22, 2011, following his jury conviction of involuntary deviate sexual intercourse (IDSI), aggravated indecent assault, indecent assault, and corruption of minors,[1] for his sexual assault of a 12-year-old boy.  Contemporaneous with this appeal, counsel for Miller has filed a petition to withdraw, and accompanying ***Turner/Finley***[2]

---

[1] 18 Pa.C.S. §§ 3123(a)(7), 3125(a)(8), 3126(a)(7) and 6301, respectively.

[2] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

"no-merit" letter. For the reasons set forth below, we grant counsel's petition to withdraw, and affirm the order on appeal.

The PCRA court aptly summarized the trial testimony as follows:

The victim, [Z.G.], who was thirteen years old at the time of trial, testified that [Miller] sexually assaulted him around the time of his birthday. He explained how [Miller] used both his finger and a "red candlestick thing" along with Vaseline, to touch the inside of [the victim's] butt. These actions left [the victim] feeling "weird", but [the victim] stated [Miller] "felt good. [The victim] also testified that [Miller] touched him "in my private part" with his hand.

[T.G., the victim's] mother, recounted how she met [Miller] when she was at a food bank with her boyfriend, Ishmael Figueroa. Both [T.G.] and Ishmael grew comfortable with [Miller], who reminded [T.G.] of her grandfather. As their relationship and trust of [Miller] developed, they began allowing [the victim] to sleep at [Miller's] residence. These sleepovers ended, however, when [the victim] "blurted out … [Miller] touches me."

[The victim's] allegations were corroborated when Detective Jacqueline Murray, a County Detective assigned to investigate child physical and sexual abuse, executed a search warrant at [Miller's] residence on September 1, 2010. Inside a Kitty Litter container located near [Miller's] bed was a "red dildo candlestick type object … various lubrication bottles and also a clear larger size tube."

Dr. [John] Van Brakel, who was working at the time as the Chairman of the Department of Pediatrics at the Lehigh Valley Hospital and with the Children's Advocacy Center, examined [the victim] on September 3, 2010. Dr. Van Brakel's "open-ended" interview and his examination of [the victim] confirmed the details of the abuse, in spite of the "normal" physical examination. Despite [the victim's] background of developmental delay and a variety of behavioral and mental health diagnoses, Dr. Van Brakel testified that [the victim] was cooperative and responsive to questioning. Dr. Van Brakel explained that he would not expect to see any physical findings

in ninety-five percent of cases, and when there are physical findings, they are "rather superficial."

[Miller] testified and placed the blame on the victim, inferring that the victim enticed him. He testified that [the victim] was "always playing with himself and being naked." On one occasion, [Miller] dried [the victim] off when he "came out of the shower and he didn't dry off." He admitted that during this incident, it was "a possibility" that he touched [the victim's] penis. On other occasions, [Miller] "had to go ahead and wipe [the victim's butt]" because [the victim] "insisted". He agreed that he thought these actions were a bad idea, but claimed [the victim] had contact with him when [the victim] crawled into bed naked.

PCRA Court Opinion, 1/31/2014, at 3-4 (record citations omitted). On August 10, 2011, a jury returned a verdict of guilty on all charges. That same day, the trial court ordered Miller to undergo an assessment by the Sexual Offenders' Assessment Board to determine if he was a sexually violent predator (SVP) under the former Megan's Law. *See* 42 PaC.S. § 9795.4.[3]

Following a hearing on November 22, 2011, the trial court determined that Miller met the criteria for classification as an SVP. *See* N.T., 11/22/2011, at 12. The court proceeded immediately to sentencing,

---

[3] Pennsylvania's Megan's Law expired on December 20, 2012, and was replaced by the Sexual Offenders Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10-9799.41. Section 9799.24 replaced Section 9795.4 with regard to an order for an SVP assessment.

imposing an aggregate term of 15 to 30 years' imprisonment.[4] No direct appeal was filed.

On October 29, 2012, Miller filed a *pro se* PCRA petition raising, *inter alia*, numerous allegations of trial counsel's ineffectiveness. Counsel was appointed, and filed an amended petition on March 1, 2013, asserting one issue, trial counsel's ineffectiveness for failing to file a direct appeal. On July 10, 2013, PCRA counsel filed a second amended petition, raising another allegation of trial counsel's ineffectiveness, that is, failing to cross-examine the Commonwealth's witness, Dr. Van Brakel, regarding his notation on an evaluation form which listed the alleged perpetrator of the sexual abuse as "Is[h]mael" and the address of where the incident occurred as Ishmael's residence. The PCRA court conducted an evidentiary hearing on September 17, 2013, which was continued until November 12, 2013. At the conclusion of the second hearing, the PCRA court entered an order denying Miller relief. This timely appeal followed.[5]

_____

[4] Specifically, the court imposed a mandatory minimum sentence, pursuant to 42 Pa.C.S. § 9718(a)(1), of 10 to 20 years' imprisonment for Miller's conviction of IDSI, a term of 60 to 120 months for aggravated indecent assault, a term of 12 to 36 months for indecent assault, and a term of 12 to 36 months for corruption of minors. The trial court ordered the sentences for aggravated indecent assault, indecent assault and corruption of minors to run concurrently to each other, but consecutively to the IDSI sentence.

[5] On December 13, 2013, the PCRA court ordered Miller to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Both PCRA counsel and Miller, himself, complied with the court's directive, filing a counseled concise statement on January 2, 2014, and a *pro se*
*(Footnote Continued Next Page)*

Prior to addressing the merits of this appeal, we must first consider whether counsel has fulfilled the procedural requirements for withdrawal as outlined in **Turner**/**Finley**:

> Counsel petitioning to withdraw from PCRA representation must … review the case zealously.  **Turner**/**Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.  Counsel must also send to the petitioner:  (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> * * *
>
> [W]here counsel submits a petition and no-merit letter that … satisfy the technical demands of **Turner**/**Finley**, the court — trial court or this Court — must then conduct its own review of the merits of the case.  If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

**Commonwealth v. Doty**, 48 A.3d 451, 454 (Pa. Super. 2012) (citation omitted).  **See also Commonwealth v. Freeland**, 106 A.3d 768, 774-775 (Pa. Super. 2014).

Here, counsel has complied with the procedural aspects of **Turner**/**Finley** by filing a "no-merit" letter, providing Miller with a copy of

(Footnote Continued) ─────────────────

concise statement on January 3, 2014.  On January 31, 2014, new counsel was appointed to represent Miller in this appeal.

- 5 -

that letter and the petition to withdraw, and advising Miller of his right to proceed *pro se* or with private counsel. **See** Motion to Withdraw, 3/28/2014; "No-Merit" Letter, filed 3/28/2014. Miller filed a timely *pro se* response to the "no-merit" letter on July 2, 2014.[6] Therefore, we proceed to a consideration of whether the PCRA court erred in dismissing the petition. **See Doty, supra**.

When reviewing an order dismissing a PCRA petition, we must determine whether the PCRA court's findings of fact are supported by the record, and whether its legal conclusions are free from error. **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014). "Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." **Commonwealth v. Carter**, 21 A.3d 680, 682 (Pa. Super. 2011) (citation omitted).

Where, as here, the claims raised on appeal challenge the effectiveness of counsel, our review is well-settled:

---

[6] In his "no-merit" letter, counsel advised Miller that he could proceed *pro se* or with retained counsel "[i]f the Superior Court grants" the request to withdraw. "No-Merit" Letter, 3/28/2014, at 4. On April 11, 2014, this Court issued a *per curiam* Order, specifically advising Miller that "he may file a *pro se* response to counsel's 'no-merit' letter or hire private counsel to do so, within thirty (30) days of the date" the order was filed. Order, 4/11/2014. After receiving a 60-day extension on May 20, 2014, Miller filed a timely response on July 2, 2014.

We begin our analysis of ineffectiveness claims with the presumption that counsel is effective. To prevail on his ineffectiveness claims, Appellant must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) Appellant suffered prejudice because of counsel's action or inaction. With regard to the second, *i.e.*, the "reasonable basis" prong, we will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." To establish the third, *i.e.*, the prejudice prong, Appellant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

***Commonwealth v. Spotz***, 18 A.3d 244, 259-260 (Pa. 2011) (internal citations omitted). "Failure to establish any prong of the test will defeat an ineffectiveness claim." ***Commonwealth v. Keaton***, 45 A.3d 1050, 1061 (Pa. 2012) (citations omitted).

The only issue addressed in the "no-merit" letter asserts trial counsel's ineffectiveness for failing to cross-examine Dr. Van Brakel regarding a notation on his evaluation form. On the form, Dr. Van Brakel listed the "Name of Alleged Perpetrator" as "Is[h]mael" and the "Address of Occurrence" as Ishmael's address. Second Amended Petition for Post Conviction Relief, 7/10/2013, at Exhibit A ("Child Physical/Sexual Abuse Evaluation Form, dated 9/3/2010). Miller argues counsel's failure to cross-examine Dr. Van Brakel about this blatant inconsistency constituted ineffective assistance of counsel.

After a review of the certified record, including the transcripts of both PCRA hearings, the parties' filings, and the relevant case law, we conclude

the PCRA court thoroughly addresses and properly disposes of this claim in its opinion. *See* PCRA Court Opinion, 1/31/2014, at 5-8 (finding trial counsel was not ineffective because (1) counsel had a "reasonable strategic basis for not cross-examining Dr. Van Brakel regarding the clerical error" since Ishmael was never a suspect, and Miller's defense was that he was "enticed" by the victim; and (2) Miller was not prejudiced by counsel's actions because Dr. Van Brakel testified (a) the victim "did not provide him with the information that made its way on the form," (b) "[h]e did not recall where he received that information;" (c) "he simply miscopied it from his own notes;" and (d) he "made a correction in the original chart, but not until after copies had already been circulated to counsel."). Accordingly, we rest upon its well-reasoned basis.

In his response to PCRA counsel's "no-merit" letter, Miller raises four additional claims for our review. First, he asserts the November 12, 2013, PCRA hearing "was meaningless as to aid [him] in developing his claims" because Dr. Van Brakel was permitted to testify over the telephone. Appellant's Response to Counsel['s] Petition to Withdraw Pursuant to This Court's April 14, 2014 Order, 7/2/2014, at unnumbered 1. Miller provides no explanation, aside from his bald allegation, of how he was prejudiced by Dr. Van Brakel's remote testimony. Indeed, PCRA counsel had a full opportunity to cross-examine Dr. Van Brakel during the hearing. *See* N.T., 11/12/2013, at 13-18. Therefore, no relief is warranted on this claim.

Miller also asserts the ineffectiveness of PCRA counsel for failing to (1) contact and/or interview a private investigator (PI) Miller had hired after his trial; (2) obtain "the video tapes" from his apartment complex; and (3) assert trial counsel's ineffectiveness for failing to call and/or interview three witnesses, and for failing to have his personal computer and DVD's/CD's "forensically diagnosed." Appellant's Response to Counsel['s] Petition to Withdraw Pursuant to This Court's April 14, 2014 Order, 7/2/2014, at unnumbered 2-3. Preliminarily, we note Miller does not even attempt to demonstrate how these allegations meet the three-prong test for ineffectiveness claims. For this reason alone, these issues may be deemed waived. *See Commonwealth v. Spotz*, 896 A.2d 1191, 1250 (2006) (boilerplate, underdeveloped claims of ineffectiveness waives claims for review; "Claims of ineffective assistance of counsel are not self-proving[.]"). Nevertheless, even if we were to consider Miller's claims, we would conclude that Miller has failed to demonstrate how he was prejudiced by prior counsel's omissions.

First, Miller asserts PCRA counsel's ineffectiveness for failing to interview the PI he hired after his trial. Miller claims the PI "would have given his findings that Is[h]mael had outstanding-warrants in New York (charges unknown), [and] that the alleged victim was in Kids Peace, a delinquent child's home, for victimizing 6-year-olds when the victim was ten

years old."[7]   Appellant's Response to Counsel['s] Petition to Withdraw Pursuant to This Court's April 14, 2014 Order, 7/2/2014, at unnumbered 2. However, even if the PI's findings were correct, the fact that Ishmael may have had outstanding warrants for unknown charges in **another jurisdiction,** or that the victim may have victimized a younger child in the past would not have been admissible at trial.   **See** Pa.R.E. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); Pa.R.E. 608(b)(1) ("[T]he character of a witness for truthfulness may not be attacked … by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct[.]"); 42 Pa.C.S. § 3104(a) ("Evidence of specific instances of the alleged victim's past sexual conduct … shall not be admissible in prosecutions" for sexual offenses).   Accordingly, Miller cannot demonstrate he was prejudiced by counsel's omission and no relief is warranted on this claim.

Miller also contends PCRA counsel should have obtained the "video tapes from [his] high-rise" because "these tapes would prove that [he is] innocent beyond any reasonable doubt."   Appellant's Response to Counsel['s] Petition to Withdraw Pursuant to This Court's April 14, 2014

---

[7] We note that Ishmael testified for the Commonwealth at Miller's trial.

- 10 -

Order, 7/2/2014, at unnumbered 3. However, Miller does not explain what he expected to see on the videotapes, and how that information would help prove his innocence.[8] Thus, again, no relief is warranted.

With respect to his allegations of trial counsel's ineffectiveness, Miller also fails to demonstrate prejudice. While Miller contends three purported witnesses "accompanied the complainant to the accused (sic) apartment during one of the alleged incidents[,]"[9] he fails to state what their proposed testimony would be and how it would have supported his defense at trial. *See Commonwealth v. Pander*, 100 A.3d 626, 639 (Pa. Super. 2014) (*en banc*) (In order to demonstrate ineffectiveness for failing to interview or present a witness, appellant must show prejudice), *appeal denied*, 2015 WL 669844 (Pa. February 4, 2015).

Further, with regard to the computer, DVD's and CD's seized from his apartment, Miller ignores the testimony of Detective Murray that the Commonwealth did conduct "a full examination on the computer and discs, and there was nothing found." N.T., 8/10/2011, at 21. Miller does not explain what exculpatory evidence he believed would be found on the computer or discs had trial counsel sought to have the items "forensically

---

[8] We note that the sexual assault occurred **inside Miller's apartment**, not in the hallway or lobby of his "high rise."

[9] Appellant's Response to Counsel['s] Petition to Withdraw Pursuant to This Court's April 14, 2014 Order, 7/2/2014, at unnumbered 3.

diagnosed." Appellant's Response to Counsel['s] Petition to Withdraw Pursuant to This Court's April 14, 2014 Order, 7/2/2014, at unnumbered 3. Accordingly, these claims, too, are meritless.

As mandated by law, we have independently reviewed the record and agree with counsel that the current appeal has no merit.[10] *See Doty*, *supra*, 48 A.3d at 457. Therefore, we affirm the order dismissing Miller's petition for PCRA relief, and grant counsel's petition to withdraw.

Order affirmed. Application for leave to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/2015

_____

[10] We note the 10-year mandatory minimum sentencing provision in 42 Pa.C.S. § 9718(a)(1), imposed for Miller's conviction of IDSI, has been found to be unconstitutional in light of the United States Supreme Court's decision in *Alleyne v. United States*, 133 S.Ct. 2151 (U.S. 2013). *See Commonwealth v. Wolfe*, 106 A.3d 800 (Pa. Super. 2014). However, an *en banc* panel of this Court in *Commonwealth v. Newman*, 99 A.3d 86 (Pa. Super. 2014) (*en banc*), determined that the *Alleyne* decision had only limited retroactivity, that is, it applied only to criminal cases that were still pending on direct review at the time it was filed. *Id.* at 90. In the present case, Miller's judgment of sentence became final on December 22, 2011, 30 days after he was sentenced and he failed to file a direct appeal. Because *Alleyne* was not decided until June 17, 2013, it does not provide Miller with the opportunity for relief.